IN THE
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ELIZABETH D.,<br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br>    Defendant. | Case No. 1:18-cv-01426-JES-JEH |

**Report and Recommendation**

Now before the Court is the Plaintiff's Motion for Summary Judgment (Doc. 14), the Commissioner's Motion for Summary Affirmance (Doc. 18), and the Plaintiff's Reply (Doc. 19). This matter has been referred for a Report and Recommendation. The Motions are fully briefed, and for the reasons stated herein, the Court recommends the Plaintiff's Motion for Summary Judgment be granted, the Defendant's Motion for Summary Affirmance be denied, and the matter be remanded.[1]

**I**

Plaintiff Elizabeth D. previously applied for Disability Insurance Benefits (DIB) and was found disabled as of March 27, 2003 in September 2003. In June 2011, the Social Security Administration determined Elizabeth was no longer disabled as of June 1, 2011. Elizabeth challenged that determination and eventually appeared and testified at a hearing before Administrative Law Judge John M. Wood in December 2013. Following that hearing, ALJ Wood issued an

---

[1] References to the pages within the Administrative Record will be identified by AR [page number]. The Administrative Record appears at (Doc. 7, 13) on the docket.

unfavorable decision on January 21, 2014. Elizabeth appealed to this Court after the Appeals Council denied her request for review. In May 2016, this Court remanded the matter pursuant to Sentence Four of 42 U.S.C. § 405(g), and the Appeals Council thereafter vacated ALJ Wood's January 2014 decision and remanded the matter to an ALJ in December 2017. In its December 2017 order, the Appeals Council also directed the ALJ to consolidate Elizabeth's DIB claim with her subsequent claim for DIB and new claim for Supplemental Security Income (SSI) which were filed on April 16, 2015. Another hearing was held on June 13, 2018 before the Honorable David W. Thompson (ALJ). At that hearing, Elizabeth was represented by an attorney, and Elizabeth and a vocational expert (VE) testified. Following the hearing, the ALJ issued an unfavorable Decision on July 26, 2018 as to Elizabeth's DIB and SSI claims. Elizabeth filed the instant civil action seeking review of the ALJ's Decision on November 21, 2018.

## II

At the June 2018 hearing, Elizabeth was 36 years old and the ALJ explained she was previously found disabled as of March 27, 2003 following kidney and pancreas transplants, hypertension, history of adrenal insufficiency (Addison's Disease), and periodic migraine headaches. AR 662. The ALJ continued, "And later on, after the transplant period would have passed, they did a review and they determined at that time that you were no longer disabled, and you asked for a reconsideration." AR 662. The ALJ detailed the procedural history of Elizabeth's DIB and SSI claims which brought them to the June 2018 hearing. In her subsequent DIB application, Elizabeth claimed the following conditions limited her ability to work: kidney transplant; pancreas transplant; Addison's Disease; thyroid issues; anxiety; depression; bicuspid aortic valve in heart; low sodium; high cholesterol; and high blood pressure. AR 1070.

Elizabeth testified, among other things, about the numerous medications she took, the physical impairments that adversely affected her ability to work, and her extreme fatigue which had become worse over the last 10 years and was currently at its worst level ever – a level 10. She estimated her level of fatigue and weakness in 2011 and 2012 was at an 8, in 2014 was at a 9 or 9.5, and in 2016 at a 9.5 to 10.

### III

In his 55-page Decision, the ALJ first found Elizabeth's disability ended as of June 1, 2011 for purposes of her DIB application, and while her date last insured was March 31, 2013 for her subsequent concurrent DIB application, she did not become disabled again through that later date. AR 595. Second, the ALJ concluded Elizabeth had not been under a disability within the meaning of the Social Security Act since April 16, 2015, the date her SSI application was filed, for purposes of her entitlement to SSI.

The ALJ explained that the medical evidence established, as of June 1, 2011, that Elizabeth's medically determinable impairments were: history of kidney and pancreas transplants; hypertension; history of adrenal insufficiency (Addison's Disease); depression; anxiety; and later records documented migraines and a personality disorder. AR 599. The ALJ stated the medical evidence supported a finding, for purposes of DIB, that medical improvement occurred as of June 1, 2011. AR 604. As of June 1, 2011, Elizabeth continued to have a severe impairment or combination of impairments, and she continued to have severe impairments as of the date of the Decision. AR 605. The ALJ made the following physical residual functional capacity (RFC) finding:

> [A]s of June 1, 2011, and continuing to the present, the claimant has had the [RFC] to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no more than occasional climbing of ramps, stairs, and ladders; no climbing of ropes or scaffolds; and

3

no concentrated exposure to extreme cold or heat, humidity, wetness, noise above level 4, and vibration.

*Id*.

The ALJ discussed Elizabeth's disability reports, her physical impairments questionnaire, her ADL questionnaires, her previous testimony in November 2012, her previous hearing testimony in December 2013, statements provided by friends and her former mother-in-law as to Elizabeth's functioning, her June 2018 testimony, her consultative physical examination results, doctors' treatment notes, and the medical opinions of record. He also included the instances Elizabeth complained of fatigue through the relevant time period. The evidence the ALJ considered spanned from 2011 through 2018.

The ALJ several times discussed Elizabeth's treating nephrologist Timothy A. Pflederer, M.D.'s treatment notes which dated back to 2003 and he continued to treat her through 2017 (per the ALJ's Decision). The ALJ detailed Dr. Pflederer's January 22, 2016 letter in which the doctor stated:

> Elizabeth [] is a patient under my care who had undergone kidney and pancreas transplant. She also has adrenal cortical insufficiency. Her kidney is functioning, but she does have a fair degree of chronic kidney disease . . . Because of these difficulties, she has chronic weakness, fatigue, and tires very easily. I believe that she is unable to consistently do light or sedentary work because of these problems. They have been going on for a number of years.

AR 627. In February 2016, Dr. Pflederer wrote that Elizabeth was under his care because of type 1 diabetes mellitus and end stage renal disease which was treated with a kidney and pancreas transplant, she also had longstanding adrenal insufficiency, and those medical conditions required her to take immunosuppression medications and steroids to maintain her health. The doctor continued that because "of both her medical conditions and medications, she has

4

fluctuating energy. She is plagued by severe fatigue . . . I think it is unlikely that she could do even light or sedentary work and concentrate during that time. These disabilities began prior to and at the time of her transplant." Id. The ALJ determined Dr. Pflederer's opinions deserved "limited weight" because his opinions relied heavily upon Elizabeth's subjective complaints of severe fatigue and difficulty concentrating which were not supported by the record evidence. He explained, "The claimant's conditions certainly limit her physical and mental functioning, but the evidence fails to substantiate that she would be incapable of performing all gainful work activity on a sustained basis." Id.

Later in the Decision, the ALJ discussed a July 18, 2016 medical record at which time Elizabeth underwent a pre-operative examination with Carlos D. Concepcion, M.D. to, as the ALJ summarized, "ensure that the claimant was in sufficient health, and had sufficient strength, to endure a trans-vaginal hysterectomy surgery." AR 635. The ALJ detailed that Dr. Concepcion stated, "[Elizabeth] has the exercise capacity greater than 10 METs. She has no cardio or pulmonary disease." Id. (citing AR 4190). The ALJ commented that Dr. Concepcion's statement was an opinion of Elizabeth's functional capacity from the standpoint of her ability to endure physical stress, it was reached after a thorough physical examination and extensive testing, and the accuracy of that opinion was "imperative" as it was a determination of Elizabeth's ability to endure her upcoming hysterectomy. Id. The ALJ articulated that based upon those factors, he found Dr. Concepcion's opinion "very persuasive," and therefore gave the opinion "great weight." Id.

The ALJ then proceeded to cite an article – <u>Metabolic Equivalents (METs) in Exercise Testing, Exercise Prescription and Evaluation of Function Capacity</u> (scholarly article) – in which, he explained, "exercise capacity was established by various inputs and using mathematical formula. Part of this was to develop tables

5

for the number of METs needed for various activities." *Id*. Table I, inserted into the Decision, provided the METs of household chores such as gardening, carpentry, grocery shopping, cooking, ironing, and snow shoveling. The ALJ explained:

> Based on the claimant's testimony, she is currently at her lowest level of functionality. Furthermore, based on her testimony, in 2011, she was about 20% more functional compared to now; she rated her functioning in 2011 at 8/10, with 10/10 representing her current level of functioning. Based on her testimony, in 2016 she was at a level of about 0-5% more functional compared to now; she rated her functioning in 2016 at 9.5-10/10. Based on Dr. Concepcion's MET rating of 10+ (and ignoring the "+") the claimant's MET level would have been 11 to 11.5 in 2011 and 9.5-10 in 2016. A review of Table I, from the [scholarly article] would still have the claimant able to perform all household chores – even at the heavy level – at all periods of time from 2011 through the present.

AR 636.

## IV

Elizabeth argues the ALJ erred in the following ways: the ALJ improperly relied on extra-record evidence; the ALJ improperly evaluated opinion evidence; the ALJ did not properly evaluate Elizabeth's migraines; and the ALJ violated due process at Step Five and failed to support the conclusion that a significant number of jobs existed in the national economy which Elizabeth could perform.

The Court's function on review is not to try the case de novo or to supplant the ALJ's findings with the Court's own assessment of the evidence. *See Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000); *Pugh v. Bowen*, 870 F.2d 1271 (7th Cir. 1989). Indeed, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Although great deference is afforded to the determination made by the ALJ, the Court does not "merely rubber stamp the ALJ's decision." *Scott v. Barnhart*, 297

F.3d 589, 593 (7th Cir. 2002). The Court's function is to determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. *Delgado v. Bowen*, 782 F.2d 79, 82 (7th Cir. 1986). Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support the decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971), *Henderson v. Apfel*, 179 F.3d 507, 512 (7th Cir. 1999).

In determining whether a claimant who was found disabled continues to be disabled, the ALJ follows an eight-step process for the Title II (DIB) claim. 20 C.F.R. § 404.1594.

At the first step, the ALJ must determine if the claimant is engaging in substantial gainful activity (SGA). If so, the claimant is no longer disabled. 20 C.F.R. § 404.1594(f)(1). If the claimant is not engaged in SGA, step two requires the ALJ to determine whether the claimant has an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If the claimant does, her disability continues. 20 C.F.R. § 404.1594(f)(2).

At step three, the ALJ must determine whether medical improvement has occurred. 20 C.F.R. § 404.1594(f)(3). Medical improvement is any decrease in the medical severity of the claimant's impairment(s) that were present at the time of the most recent favorable medical decision, and medical improvement is established by improvement in symptoms, signs, and/or laboratory findings. 20 C.F.R. § 404.1594(b)(1). If medical improvement has occurred, the analysis proceeds to the fourth step for the Title II claim. If not, the analysis proceeds to the fifth step.

At step four, the ALJ must determine whether the medical improvement is related to the ability to work. 20 C.F.R. § 404.1594(f)(4). If so, the analysis proceeds to step six.

At step five, the ALJ must determine if an exception to medical improvement applies. 20 C.F.R. § 404.1594(f)(5). There are two groups of exceptions. 20 C.F.R. § 404.1594(d), (e). If an exception from the first group applies, the analysis proceeds to the next step. If an exception from the second group applies, the claimant's disability ends. If no exception applies the claimant's disability continues.

Step six requires the ALJ to determine whether all the claimant's current impairments in combination are severe. 20 C.F.R. § 404.1594(f)(6). If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled. If they do, the analysis proceeds to the next step.

At step seven, the ALJ must assess the claimant's residual functional capacity (RFC) based on the current impairments and determine if she can perform past relevant work. 20 C.F.R. § 404.1594(f)(7). If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists that the claimant can perform, given her RFC and considering her age, education, and past work experience. 20 C.F.R. § 404.1594(f)(8). If the claimant can perform other work, she no longer is disabled. If the claimant cannot perform other work, his disability continues. At this last step, the claimant still has the burden of proving disability, but a limited burden of going forward with the evidence shifts to the Social Security Administration. To support a finding of disability, the SSA must provide evidence demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given the claimant's RFC, age, education, and work experience.

In order to qualify for SSI under Title XVI, an individual must show that she is disabled. An individual is considered disabled for purposes of Title XVI "if [s]he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A five-step sequential evaluation process is used to decide whether an individual is disabled. *See* 20 C.F.R. § 416.920.

First, the ALJ must determine whether the individual is performing substantial gainful activity. If the individual is not, the evaluation proceeds to the next step. At step two, the ALJ must determine whether the individual has a medically determinable impairment that is severe or a combination of impairments that are severe and which meets the duration requirement. If so, the evaluation proceeds to the next step. At step three, the ALJ must determine whether the individual suffers from an impairment which meets or equals any impairment listed in the appendix and which meets the duration requirement. If the individual does not, the evaluation proceeds. At step four, the ALJ must determine whether the individual is unable to perform her past relevant work which includes an assessment of the individual's residual functional capacity (RFC). If the individual can perform her past relevant work, she is not disabled. Finally, at step five, the ALJ must consider the individual's RFC assessment and age, education, and work experience to determine whether the individual can make an adjustment to other work. If the individual is able to do so, she is not disabled.

The plaintiff has the burden of proof on steps one through four. However, at step five the burden shifts to the Commissioner. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005).

In the instant case, Elizabeth claims error on the ALJ's part at Steps Seven and Eight of the Title II sequential evaluation and at Steps Four and Five of the Title XVI sequential evaluation.

### A

Elizabeth argues that the ALJ improperly relied on extra-record evidence – an article entitled <u>Metabolic Equivalents (METs) in Exercise Testing, Exercise Prescription and Evaluation of Function Capacity</u>[2] from a University of Ottawa scholar – to support the conclusion that she was not as weak and physically limited as she alleged. She more specifically argues that the ALJ used that extra-record evidence to independently interpret the probative value of Dr. Concepcion's single notation that Elizabeth had a certain exercise capacity on one occasion prior to surgery. She says the ALJ's error in doing so was not harmless as the ALJ may have given controlling weight to treating nephrologist Dr. Pflederer's opinion had the ALJ not given great weight to Dr. Concepcion's opinion. The Commissioner counters that the ALJ reasonably researched the meaning of a medical term – METs – easily ascertainable via a quick and basic internet search and thus did not rely on extraneous non-record evidence. The Commissioner argues that the ALJ reasonably found Dr. Concepcion's opinion was about Elizabeth's capacity to endure physical stress, and, further, the ALJ reasonably found that Elizabeth was not physically precluded from performing all work activities given Dr. Concepcion's opinion that she could perform 10 METs.

Elizabeth argues the ALJ's error in this regard violated due process as the article was relied upon to resolve an outcome-determinative issue without

---

[2] The ALJ fully cited the article as follows: <u>Metabolic Equivalents (METs) in Exercise Testing, Exercise Prescription and Evaluation of Function Capacity, an article by By M JETTÉ, K. SIDNEY, *G. BLÜMCHEN†</u> (Department of Kinanthropology, School of Human Kinetics, University of Ottawa, Ottawa, Canada; *Present affiliation: Laurentian University, Sudbury, Ontario, Canada † Klinik Roderbirken, Leichlingen, Federal Republic of Germany). AR 635.

10

providing her the opportunity to review and comment on that evidence. It is improper for an ALJ to consider evidence outside the record in determining the extent of a claimant's disability. *Nelson v. Apfel*, 131 F.3d 1228, 1236 (7th Cir. 1997) (internal citations omitted) (addressing claimant's argument that the ALJ violated his due process by considering his behavior at his sister's disability hearing).

In *Baker v. Barnhart*, the Northern District of Illinois court determined the ALJ erred in that case because he did not proffer his medical reference (THE PILL BOOK) to the claimant for review and comment. No. 02 C 3195, 2003 WL 21058544, at *8 (N.D. Ill. May 8, 2003). The *Baker* court determined the ALJ used that reference for more than a "mere definition;" he used it to resolve the severity of pain the claimant was feeling and to determine her credibility. *Id*. Thus, because the ALJ did so without submitting the text to the claimant and making it a part of the record – a process required by the Hearings, Appeals and Litigation Law Manual (HALLEX) – the *Baker* court determined the case had to be remanded. *Id*. In *Spears v. Berryhill*, the Northern District of Illinois court determined remand was appropriate where the ALJ in that case used an unidentified source to obtain additional information about a treating doctor who opined the claimant incapable of certain activities. No. 16 C 9242, 2018 WL 3108774, at *3 (N.D. Ill. June 25, 2018). The ALJ used that information to establish the doctor was not a treating physician and to provide reasoning for according her findings limited weight. *Id*. The ALJ did not submit that extra-record evidence to the claimant for review and comment and did not use that evidence for "mere clarification." *Id*.

Here, the Commissioner argues that the above case law, cited by Elizabeth in her brief, does not support her position because here, unlike in *Baker*, the ALJ did not rely on a medical text to resolve an issue; instead, the ALJ relied on Dr. Concepcion's opinion that Elizabeth could handle 10-MET work. The Commissioner also points out that the *Baker* court relied on a rescinded provision

11

of the HALLEX. The Commissioner's attempt to distinguish the *Baker* case fails, as does his blanket statement that the case law Elizabeth relies upon does not support her position.

As in *Baker* and *Spears*, the ALJ in this case used the scholarly article in this case for more than a mere definition or mere clarification. In his Decision, the ALJ cited Dr. Concepcion's statement that "Elizabeth has exercise capacity greater than 10 METs. She has no cardio or pulmonary disease." AR 635. He determined Dr. Concepcion's opinion was of Elizabeth's "functional capacity from the standpoint of her ability to endure physical stress." *Id*. He thereafter stated:

> In Metabolic Equivalents (METs) in Exercise Testing, Exercise Prescription and Evaluation of Function Capacity . . . exercise capacity was established by various inputs and using mathematical formula. Part of this was to develop tables for the number of METs needed for various activities.

*Id*. The ALJ then included one of those tables in the Decision. He considered Elizabeth's testimony as to her level of functionality and Dr. Concepcion's 10+ MET rating and concluded, "A review of Table I . . . would still have the claimant able to perform all household chores – even at the heavy level – at all periods of time from 2011 through the present." AR 636. The ALJ found Dr. Concepcion's opinion "very persuasive" and gave it "great weight." AR 635. He labeled Dr. Concepcion's opinion as a "significant opinion" and explained that because the doctor had only seen Elizabeth on two occasions, he could not find Dr. Concepcion to be a primary treating source and therefore was not able to give his opinion controlling weight.

Clearly, the ALJ in this case used the scholarly article to not merely define or clarify "METs" but also used it to resolve a determinative issue in this case – Elizabeth's physical functional capacity. Without the data provided in the scholarly article, the ALJ would not have understood the significance of 10 METs

12

to which he ultimately assigned great weight (as contained within Dr. Concepcion's opinion) in the context of Elizabeth's disability claim. The ALJ's consideration of the scholarly article was therefore not just incidental to his Decision.

From a record containing over 4,000 pages, the ALJ struck upon the results of one examination by a doctor who saw Elizabeth just twice. In order to give that opinion meaning, the ALJ turned to extra-record evidence (the scholarly article) which provided him a basis to find that opinion (noting Elizabeth's exercise capacity at greater than 10 METs) "very persuasive" and to give the opinion "great weight." The ALJ overstepped. His consideration of Table I from the scholarly article and his application of it to the facts of Elizabeth's claims align more with him playing doctor than with him making determination within the bounds set by the relevant Social Security regulations. *See Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings"). Also, it begs the question whether Table I inserted into the Decision provided metabolic equivalents of household chores for those individuals with severe physical or mental impairments – in other words, disability claimants. Therein lies the problem with the ALJ's failure to consider the scholarly article without first proffering it to Elizabeth. She had no opportunity to question the accuracy of that scholarly article or to challenge it via, for instance, a proffer of her own scholarly article or some other text or source which may have included information and/or tables more supportive of her statements as to physical functional limitations.

On a side note, in light of the Commissioner's comment that the *Baker* court relied upon a rescinded version of the HALLEX (the Court acknowledges the Seventh Circuit has not yet ruled on whether failure to follow the HALLEX establishes rights enforceable by claimants, *see*, *e.g.*, *Dean v. Colvin*, 585 F. App'x

904, 905 (7th Cir. 2014) (unpublished opinion)), the current version of HALLEX I-2-7-1 explains "proffer" in the context of evidence development "means to provide an opportunity for a claimant (and appointed representative, if any) to review additional evidence that has not previously been seen and that an adjudicator proposes to make part of the record." HALLEX I-2-7-1 further provides that proffering evidence allows a claimant to "[c]omment on, objective to, or refute the evidence by submitting other evidence[.]" The provision of the HALLEX to which the Commissioner cites in support of his statement that its "current version" does not require ALJs to proffer such evidence as the scholarly article here does not mention the proffer of evidence. It is entitled "Writing the Decision." HALLEX I-2-8-25. HALLEX I-2-8-25 provides, in part that, "When writing or reviewing a draft decision, an ALJ will not use: . . . Medical texts or publications as the authority for resolving an issue[.]"

It is true, as the Commissioner argues, that the ALJ in his Decision noted that Elizabeth's MET level and a conclusion that she would be capable of performing all household chores was not outcome determinative as the ability to perform household chores did not equate to the ability to work. Nevertheless, the ALJ continued that the ability to perform household chores "does provide some insight into functioning." AR 636. He later rejected Elizabeth's repeated allegations of shortness of breath with fairly minimal activity based, in part, on Dr. Concepcion's conclusion in July 2016 that Elizabeth had an exercise capacity of greater than 10 METs which "would seem to contradict any significant issues with shortness of breath." AR 640. He simply would not have had the insight he did had it not been for the scholarly article he considered. The ALJ's consideration of that extra-record scholarly article shadows the rest of his Decision. For instance, as Elizabeth argues, the ALJ's determination that Dr. Concepcion's opinion was

entitled to "great weight" necessarily affected his consideration of treating nephrologist Dr. Pflederer's opinion. This matter must be remanded.

### B

The Court does not address the remaining arguments as the harmful legal error the ALJ committed, addressed *supra*, alone precludes the Court from recommending that the ALJ's Decision be affirmed. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009) (an ALJ's denial of disability benefits will be reversed "only if the decision is not supported by substantial evidence or is based on an error of law").

### V

For the reasons set forth above, it is recommended that: 1) the Plaintiff's Motion for Summary Judgment (Doc. 14) be granted; 2) the Defendant's Motion for Summary Affirmance (Doc. 18) be denied; and 3) this case be remanded to the Commissioner of Social Security for further proceedings consistent with this Opinion Pursuant to 42 U.S.C. §405(g), Sentence Four.

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk within fourteen (14) days after service of this Report and Recommendation. FED. R. CIV. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *Lorentzen v. Anderson Pest Control*, 64 F.3d 327, 330 (7th Cir. 1995).

*It is so recommended*.

Entered on April 27, 2020.

s/Jonathan E. Hawley
U.S. MAGISTRATE JUDGE